Judge Marshall
delivered the Opinion of the Court.
'This case depends upon the question whether a mortgage of slaves and personalty, made in 1819, and recorded within eight months,, in the county in which the mortgagor resided, and in which a part of the slaves and personalty was also situated, at the time, is valid against a a subsequent purchaser of one of the slaves conveyed by the mortgage, but which was not, at its date, nor at any time afterwards, in the county in which the mortgage deed is recorded.
Until the passage of the act of 1820 (1 Stat. Law, 448,) no act has, in direct terms, prescribed the county in which a mortgage of slaves or personalty should be recorded. The act of 1748 (1 Stat. Law, 429,) directs conveyances of land to be recorded in the General Court, or in the county in which the land dies, within eight months from their delivery, if made by a resident; and without making any discrimination as to slaves or personalty, declares, in a subsequent section, that all mortgages and deeds of trust whatsoever, shall be void against all creditors and purchasers, unless they shall be acknowledged, or proved, and recorded, according to the directions of that act. These directions, in their literal import, apply only to deeds of land, and cannot, so far as they point out the place of record, be applied literally to slaves. The question then is, what effect, consistently with the object and intent of the act, is to be given to the requisition that the deed for land shall be recorded where the land lies, when you look to,it for the direction where to record a mortgage of slaves. Shall it be understood to mean that the mortgage must be recorded in the county where the slaves may happen to be at the date of the deed; or in that in which the owner, or mortgagor resides?
*560 ’The common understanding and practice of the country, sanctioned by the acquiescence, though not by any express adjudication of this Court, has given to the requisition the latter construction, and it is, in our opinion, supported by a consideration of the true object of requiring such instruments to be recorded, as well as by analogy to the case of lands to which the requisition directly applies. The object of recording deeds is at once to preserve a testimonial of the facts, and to give to the public an opportunity of knowing those acts by which the title to property is affected. Lands, being permanent, indicate with certainty their own neighborhood as the proper place of preserving the evidences of title. But personal property, being movable and liable to frequent •changes of position, its actual position at the time of making a conveyance, furnishes no useful indication of the place for recording the evidences of transfer. The owner, also, may change his residence, but his personal property is still more liable to change its position; and it is less easy to trace it through its various localities than to trace the owner through his changes of residence. Besides, wherever a man’s personal property may be in fact situated, as it is considered to be in the possession ■of the general owner, and is for many purposes looked upon as' attending his person, so for this purpose of ascertaining where a deed conveying it from the owner, should be recorded, it may and ought to be considered as situated where he is himself domiciled; and for this purpose the mortgagor must be considered as the owner, as he is so considered by the mortgagee, and by the creditors and subsequent purchasers, for whose benefit the act was intended. Another consideration is that, as one object of recording a mortgage of personal property is, that those who may wish to deal with the apparent owner, may have the opportunity of knowing what he has himself done to affect his title or interest in the thing, it would seem to be appropriate, that the enquiry for the evidences of his acts should be made at or near his own place of residence, rather than that'the enquirer should be compelled to follow up the property itself, through its various changes of position, as the means of *561 fending the evidence of any transfer which may have ■been made.
It musf, however, be admitted, that neither the residence of the mortgagor, nor the position of the property at the date of the mortgage, furnishes so certain an index to the place where the record of the instrument ought to be and may be found, as is furnished in the case of & conveyance of land; nor so satisfactory a one as might be desired, if attainable; but we think the residence of the party being more permanent, and more easily traced than the locality of his moveable property, is more appropriate to the purposes of the law-, and answers as well to its literal requisition. We are, therefore, of the opinion, that the better construction of t'h'e act is, that which it has commonly received, viz: that it authorizes the recording of mortgages of slaves or personal property in the county where the mortgagor resides, without regard to that in which the property may happen to be at the time, and that a 'bona fide mortgage recorded in that county, within eight months from its delivery, is valid against subsequent purchasers.
So far as this construction rests upon the suitableness! and propriety of referring to the residence of the parties to instruments of this character, as indicating the placb of record, rather than to the property conveyed — it is confirmed by the provision of the act of 1798 (2 Stat. Law, 1480,) which authorizes a deed of gift of slaves to be recorded in the county where one Of the parties resides; and more particularly by the provisions of the acts of 1785 (1 Stat. Law, 432,) and 1796 (1 Stat. Law, 439,) which direct that covenants or deeds of marriage settlement, including personal estate only, shall be recorded in the county in which the party bound thereby may reside. All of these provisions are evidently founded on the idea that the county in which the party to the com veyance resides, is the proper place in which the evidence of title and of transfer or encumbrance should be preserved, and that its preservation in that county is sufficient to give it the requisite notoriety.
In the present case, one of the slaves-, and perhaps all of the personalty included in the mortgage, was in the *562 county in which the deed was recorded; but under the view which we have taken of the general question, we have deemed it unnecessary to enquire into the effect of particular fact. It might be entitled to more weight ;n determining where a mortgage should be recorded since the act of 1820.
From the construction given to the act of 1748, in the foregoing opinion, Judge Ewing dissents — being of opinion that the directions of the act, when applied to mortgages of slaves, requires that they should be recorded in the county in which the slaves are domiciled at the time; and that in this case especially, where the interest of the mortgagor in such of the slaves as were not actually in the county of his residence, was a reversionary right, to take effect in possession after the dower estate of his mother, the residence of the reversioner was not the proper place of recording the mortgage.
But the majority of the Court, while they admit that the statute is susceptible of being so construed as to require the mortgage to be recorded in the county where the slave may happen to be at the time, and have endeavored to combat that construction, do not perceive that there is any middle ground to be occupied, consistently with that certainty which should characterize a sound exposition of the law. If the statute be considered as referring to the actual visible position of the slave at the time, as indicating the county in which the mortgage should be recorded, the parties to the mortgage might themselves, in ordinary cases, know where the record should be made; though there might be cases in which even they would not know where the slave actually was at the time. We have already alluded to the difficulty which a subsequent dealer would encounter in tracing the slave through every county in which he may have been for years, in order to find out whether there is in any of them the record of a mortgage; and have attempted to show, that there would be less difficulty in tracing the mortgagor through the various counties of his residence. But if the mortgage may be recorded in some county different from that in which either the mortgagor resides, or the slave may happen to be at the date of tjie *563 mortgage, we think the difficulties thrown upon the parties to the mortgage, in knowing where it is to be recorded, and upon the subsequent purchaser or creditor, in knowing where to look for the record, will be greatly increased. We know of no certain criterion for determining where the permanent domicil of the slave is, but by referring it to the domicil of the mortgagor.
If the owner of a slave resides in one county, and has hired him for five years in another, to a person who hires ¡him for one of the years in a third county, and he is employed and actually commorant, for one month of that year, in a fourth county, in which of these four counties shall a mortgage executed during that month, by the ultimate owner, be recorded? Shall the parties be required to follow up the slave to the county of his actual commorancy at the time, and there record the mortgage, or may they stop in the county of the tenant for one year, or for five years ? And if they may record it in either of these counties, in which shall it be, and on what principle can a discrimination between them be founded, which will be of so marked and definite a character as to point out to the creditor or subsequent purchaser the county in which he must search for the record? We do not perceive any principle upon which such a discrimination can be founded, if a due regard be paid to the obvious purpose of the law. That purpose, we think, will be best answered, in all cases, by recording the mortgage in the county where the mortgagor resides, whether he be the ultimate owner, or the owner of any intermediate temporary interest. Under this construction, the subsequent dealer has no difficulty but in tracing the residence of the mortgagor. So far as the interest of the mortgagor is concerned — and to this extent only, is the creditor or subsequent purchaser affected — it seems to us, that the' residence of the mortgagor, whether he be the permanent, or temporary owner, may properly be considered as the domicil of the slave for the purposes for which the record is required to be made.
We are, therefore, of the opinion, that in the case above supposed of the slave being hired from county to county, the ultimate owner, the hirer for five years, and *564 the hirer for one year, might each have mortgaged his interest in- the slave during the month of his absence in a fourth county,.and that the mortgage of each would be valid to the- extent of the mortgagor’s interest, if recorded.in the county of his. residence: and that the case would- not be changed by the fact that one of them had a life interest in. the property.
The decree of the Circuit Court in regard to the effect of the mortgage, being in conformity with the opinion of'the majority of this, Court, is therefore affirmed.