## Vaughn *vs* Bell.

### ERROR TO THE BOYLE CIRCUIT.

#### *Registry of mortgages.*

JUDGE SIMPSON delivered the opinion of the Court.

DETINUE. 128 9bm 447 483

*Case* 101.

*June* 23.

VAUGHN sold a horse to Totten, and took from him a mortgage on the horse to secure the payment of the purchase money. The sale was made in the county of Garrard, and the mortgage acknowledged and recorded in that county. Totten resided in the county of Lincoln, and immediately after his purchase, returned home, and took the horse along with him. He afterwards sold or made some disposition of the horse, and he came into the possession of Bell.

Case stated.

9bm447
107 622

Vaughn then brought this suit against Bell for the horse, claiming title to him under the aforesaid deed of mortgage; and the question is, whether or not the mortgage was legally recorded.

In the case of *Singleton* vs *Young's executors*, (3 *Dana*, 559,) this Court, upon a careful review of the several acts of the Legislature relating to the subject, prior to the act of 1820, decided, that the proper place to record a mortgage of slaves or personal property, was the county in which the mortgagor resided, without regard to the place where the property might happen to be at the time.

The proper county in which to record a mortgage of slaves or personal property. is that of the residence of the mortgagor, (3 *Dana*, 559.)

The act of 1820, (1 *Stat. Law*, 449,) provides that no deed of mortgage thereafter executed, for or upon any real or personal estate, shall be good or valid, &c., unless such deed shall, within sixty days after its execu-

By the act of 1820, no mortgage upon any real or personal estate is valid, unless deposited

VAUGHN
vs
BELL.

for record in the
office of the
County Court
Clerk of the
county where the
estate, or the
greater part
thereof lies.

tion, &c., be deposited for record in the office of the County Court Clerk of the county where the estate therein conveyed, or the greater part thereof lies.

The language used in this last named act applies more appropriately to land, than to personal property. If, however, it changes the law in reference to the proper place of recording a deed of mortgage for personal property, in any supposable state of case, we are satisfied that, according to the facts in this case, the mortgage should have been recorded in the county of Lincoln, where the mortgagor then resided. In legal contemplation, the property mortgaged "lay" or was, in that county at the time, at the residence of the proprietor. Totten did not leave the horse in the county of Garrard, it was not remaining, or staying in that county at the time, and could not with any propriety of language, be said to lie there.

If the owner of a horse should reside in one county and ride into another for some temporary purpose, and whilst in the latter county, should mortgage the horse, and take him back home with him to his place of residence, the whole object of requiring a mortgage to be recorded would be defeated, if it were sufficient to record it in the county where the property happened to be at the time, for a mere temporary purpose.

Whether, therefore, the act of 1820, has or not produced any change in the law as it was at the time of its passage, in reference to the place of recording a mortgage on personal property, when the property is situated for some permanent purpose, in a county different from that in which the mortgagor resides at the time, (which we do not now decide,) we are well satisfied that no such change is produced by it, when the property usually remains in the county where the mortgagor resides, and happens to be in another county for some temporary purpose merely, at the time the deed is executed.

As, therefore, the deed of mortgage in this case was not legally recorded, and as there was no evidence of notice to Bell of its existence, before he purchased the horse in contest, Vaughn could not maintain his action.

As the verdict of the jury must have been, as it was, given for the defendant, it is unnecessary to notice the other point made; for admitting it to have been improperly ruled by the Court, in favor of the defendant, still, as the verdict must have been for him on the law of the case, and the plaintiff had shown no right to a verdict, the error, if one existed, could not have operated to his prejudice.

Wherefore, the judgment is affirmed.

*Burditt* for plaintiff; *J. & W. L. Harlan* for defendant.